Reese, J.
delivered the opinion of the court.
This bill was brought by the executors of Samuel Bowman, to have a construction of certain portions of the will, and the direction of the court of chancery thereon.
The most material question arises upon the following devise, to wit: “Item. I give and bequeath to my daughter Elmira, wife of Silas Tucker, one negro woman, Eliza, who is to be put under my daughter’s .control entirely, until such time as Silas Tucker may furnish her another, that my daughter Elmira may accept in place of Eliza. I further give and bequeath to my daughter Elmira three negroes, to wit, three children of Eliza’s, named and known as follows, one girl named Lucy Ring, one other girl named Nicy, and boy named George. And in case that Silas T ucker, the present husband, of my daughter Elmira, refuses to take the above named negroes on the above conditions, my executors then shall take the said negroes, and sell them together to the highest bidder on a twelve month’s credit, and the proceeds to be kept in the hands of my executors for the benefit of my daughter; should she need the money for maintenance, my executors shall then in that case pay over said money to my daughter Elmira. My further wish and desire is, that in case my daughter Elmira should die without issue, then and in that case, all the property that I have given, to be given to the Lord’s treasury, to wit, to religious societies, such as the Presbyterian church may direct.” In a subsequent *649 item he adds, “I give and bequeath unto my daughter the right and pleasure of taking a negro boy, to wit, Fed, in the place of negro woman Eliza, who has been bequeathed to her before. In case she should make choice of Fed, then the woman Eliza is released from the bequest, otherwise to be in force.”
After the death of the testator, and the probate of the will, the daughter, Elmira, chose the slave Fed, instead of Eliza, and Tucker accepted the negroes as the separate property of the wife, and they were placed in her and his possession. Elmira has died without issue living at her death.
The husband claims the property in virtue of his marital right, andas administrator of his wife, and the residuary legatees claim it in opposition to him, both insisting that the devise over to what is called the treasury of the Lord, orto the Presbyterian church in trust for religious societies, is void for uncertainty and on various grounds; but the former insists, further, that if the limitation in remainder had been to a person capable of taking, still the devise would not have been a good executory devise, because it is a limitation in remainder after an indefinite failure of issue, and, therefore, absolutely in the first taker. The residuary legatees deny this proposition, and assert that the limitation over would have been good, if made in favor of one capable of taking; but that not being the case, it must revert to, and vest in the heirs of the donor; in this case, the residuary legatees. The general subject is one on which volumes have been written, and it is not altogether new in this State. Much that is recondite, and much that, is perplexed, belong to, and obscure many of the cases to be found in the books. But we deem this case readily determinable by the well settled principles arising from the general rule, without any resort to subtle distinction, or to slight shades of analogy of varying and doubtful effect, arising from the presence or absence of words of controling import, more or less pregnant. The devise stripped of all unimportant verbiage is simply, that the testator gives four negroes to his daughter, and if she die without issue, then to be given to the Lord’s treasury, &c. The fixed and uniform construction of those words, “dying without issue,” is an indefinite failure of issue.
*650 In the struggle which has marked many of the cases, particularly in relation to bequests of personal property, to escape from the operation of the general rule, importance has sometimes been attached improperly in the opinion of Judge Kent, to the word leaning no issue, and to the word survivor, as descriptive of the person to take over, where such person was in being at the time of the will. But neither of these words is here.
Again: “Dying without children.” The latter word has some times been held by those struggling against the general rule, as meaning something different from “issue,” and as more favorable to the limitation in remainder. But here the word “issue” is used. There can be but little doubt that the actual intention of the testator in the use of these words, was in conformity with this well fixed legal meaning. If he had been asked, whether, if his daughter should leave a .child, and that child should live thereafter a month or a year and then die, his wish was, that Tucker, the father, should receive and enjoy the negroes, or the Presbyterian church, for the purpose of aiding religious societies, should recover and appropriate it, none who read this will can doubt that he would have said, he desired the latter should have the property. Are there any accompanying words, restrictive of the words used, and limiting their signification to a dying without issue living at the death of the devisee? We think there are none such. If the husband would not receive the property, on the death of the testator, as being the separate property of the wife, then the executors were at once to sell it and hold the proceeds for the benefit of the daughter, if she needed it, to give the money to her absolutely. But if the husband received it, as he did, the trust of the executor as to that was at an end.
No act is directed to be performed by the executor, with regard to the property, no duty imposed, having relation to a period subsequent to that of the daughter dying without issue, so as to tend to fix the meaning of those words to a definite failure of issue.
The case of Williams vs. Turner, 10 Yerg. 289, where this court held the devise over to be good, because limited to take *651 effect, upon a definite failure of issue, the words were: “It is my wish and desire, that should any of my children die without increase, that my executors shall take back the property that I have devised to them, and divide it amongst the rest of my children.”
Here was the word increase, not issue ,and the executors who were expected to be then alive, were to take back the property, and divide it among testator’s surviving children. These words show as strongly as any accompanying words could show, that a remote and indefinite failure of issue, was not in the meaning or contemplation of the testator. But this case is the very opposite; accompanying words of controlling import do not exist. The daughter and her issue, however remote, were the primary objects of the testator’s bounty. The persons or objects to take on failure of these, the Presbyterian church or religious societies would be in existence at any period, however remote, when the issue might fail. We hold, therefore, that this property belonged absolutely to the'first taker, and of course to Tucker, the husband.
After the death of the testator’s widow or her removalfrom a tract of land devised to her, testator directs, that the rents shall be given annually to his daughter Elmira, to buy apparel for her and her little girls.
What interest has Tucker, the husband, in this land, in the events, that have happened? We answer none. If Elmira had survived her mother, the charge upon the land, or his interest in it, would have ceased with her life.
We cannot hold it to be a devise in fee of an equitable estate. The husband is not tenant by the courtesy. He has no interest whatever in it, under the will.
As to the bequests to the four societies mentioned in the will, of fifty dollars each, and the same sum to the presbytery, we cannot direct the executors on the subject. We perceive they are not parties on the record.
We know not that they are incorporated or capable, therefore, of taking directly or in trust; and if any of them are incorporated, we know not whether by the terms of the incorporation they are capable of taking by will or devise. Nothing is *652 shown on the subject, and, therefore, we give no advice to the executors. The decree of the chancellor will be modified according to this opinion.